STATE OF NORTH CAROLINA v. JOHN JOSEPH ZINKAND

No. COA07-980

(Filed 3 June 2008)

### 1. Evidence— prior crimes or bad acts—stale act—cross-examination—credibility

The trial court did not err in a multiple statutory sex offense, double crime against nature, and taking indecent liberties with a child case by overruling defendant's objection to the testimony of several witnesses who testified to an alleged act of sexual misconduct between defendant and his sister occurring in 1979 or 1980 because: (1) defendant called and examined his sister as a direct witness, and the evidence of molestation of his sister was

elicited on cross-examination to test the credibility of defendant's witness; (2) when defendant requested that the trial court give an N.C.G.S. § 8C-1, Rule 404(b) instruction regarding his sister's testimony, the trial court did so; and (3) defendant cannot show prejudice in the trial court's admission of the challenged evidence since it would have no probable impact on the jury's decision in light of the overwhelming evidence of defendant's guilt.

**2. Sexual Offenses— sexually violent predator—notice— investigation—written findings or basis for findings required**

The trial court erred by ruling that defendant is a sexually violent predator because: (1) the classification of a sexually violent predator under N.C.G.S. § 14-208.20, requires the district attorney to file notice of his intent to seek the classification within the time provided for pretrial motions under N.C.G.S. § 15A-952 or later with the allowance of the trial court for good cause shown, and the study of defendant and whether the defendant is a sexually violent predator shall be conducted by a board of experts selected by the Department of Correction; and (2) there was no indication the State gave notice of its intent to classify defendant as a sexually violent predator, no indication there was an investigation by a board of experts, and no written findings by the trial court as to why defendant was to be classified as a sexually violent predator or a basis for the findings.

Appeal by defendant from judgment entered 17 November 2006 by Judge C. Preston Cornelius in Macon County Superior Court. Heard in the Court of Appeals 14 April 2008.

*Attorney General Roy Cooper, by Assistant Attorney General Anne M. Middleton, for the State.*

*Mark Montgomery for defendant.*

BRYANT, Judge.

Defendant John Zinkand appeals from three counts of statutory sex offense, two counts of crime against nature, and one count of taking indecent liberties with a child.

Evidence presented at trial tended to show that Thomas,[1] at the time of trial a boy of fifteen years, and his mother lived with defend-

---

1. "Thomas" is a pseudonym used to protect the victim's identity.

STATE v. ZINKAND

[190 N.C. App. 765 (2008)]

ant in 2003. Defendant and Thomas's mother married that year. Defendant began molesting Thomas shortly after defendant married Thomas's mother.

Thomas testified that he and defendant engaged in acts of kissing, oral sex, anal sex, and analingus, and these acts would occur in Thomas's home—in the living room or in a bedroom. In exchange for sex, Thomas received Yugioh game cards, money, CD's, and promises to fix-up a car for Thomas to drive. Thomas also testified that he observed defendant engage in oral and vaginal sex with a dog. On multiple occasions, defendant also compelled Thomas to engage in sex with a dog. On 20 March 2006, Thomas disclosed to his mother that defendant was molesting him; that day Thomas's mother contacted the authorities.

Thomas's mother testified that both she and her son were being emotionally and physically abused while they lived with defendant, but at the time, she was unaware of any sexual relations between defendant and her son. Prior to Thomas's disclosure about defendant's sex acts, Thomas's mother enrolled him in therapy due to outbursts of anger.

When asked if she ever observed anything odd during the course of her marriage, Thomas's mother testified that once she caught defendant in their basement having sex with a goat. The family had several pets—at one point several goats and five dogs. She testified that she was repulsed but she still loved defendant and simply didn't know what to do. Later, approximately a month before Thomas revealed defendant's conduct to her, Thomas's mother observed defendant in their living room having sex with a neighbor's dog. Thomas's mother testified that she was just in shock—she didn't know what to do, what to say, or where to go. But, she did not think defendant would harm Thomas.

Thomas's mother testified that the day Thomas confided in her, defendant was not at home and Thomas stayed home from school. Thomas did not go into detail about defendant's acts but related that defendant had molested him. Thomas's mother asked him to describe defendant's anatomy, and Thomas described defendant's anatomy "exactly." At that point, Thomas's mother contacted the authorities.

Detective Judy Bradford of the Macon County Sheriff's Office, Juvenile Investigations Unit interviewed Thomas. Det. Bradford testified that when Thomas became comfortable, he disclosed that he and

defendant were engaging in sexual acts, such as: sodomy, oral sex, and sex with animals. On one occasion, Thomas's mother took him to the hospital due to the abnormal swelling of his penis. Thomas informed Det. Bradford and later testified that his penis was swollen due to defendant's handling, but at the time, he did not tell hospital staff the cause of injury.

Det. Bradford took Thomas to be examined by Dr. Jennifer Brown, a physician and founder of Kid's Place in Macon County, North Carolina, a Child Advocacy Center where children suspected of being abused or neglected can be examined or receive treatment. Dr. Brown testified as an expert in the field of pediatrics. Dr. Brown noted that Thomas's ability to communicate, specifically his sentence structure, was more akin to that of a younger child. During her interview, Dr. Brown questioned Thomas about his relationship with defendant at which point Thomas tended to get "very nervous and kind of embarrassed." Dr. Brown asked Thomas whether defendant "touch[ed] [him] in some way [Thomas] didn't like . . ?" Dr. Brown testified that Thomas's responses included phrases such as, "my d—, he licked it"; "stuck his d— up my butt"; and "he made me do a dog." Dr. Brown testified that "do it" meant having intercourse with the dog. For purposes of corroboration, Dr. Brown testified to Thomas's statements which included an occasion when Thomas's mother walked in on defendant in the basement having sex with a goat.

Dr. Brown testified that Thomas gave an explicit history of sexualized contact but his physical exam, though consistent with that history, yielded nothing specifically abnormal. Dr. Brown also stated that ninety-eight percent of boys who have been sexually abused will have no physical findings whatsoever. "A child who has had multiple assaults over a long period of time tends to have less ability to recall details about a specific assault than the child who has had it one time, because it happened so many times that the details begin to run together . . . ." "[I]t becomes normalized." Dr. Brown testified that Thomas stated the molestation occurred over two and a half years. "When they do disclose, they tend to give only a tiny incident or they tend to wait years, and there's something that pushes them over that makes them willing to finally disclose." "[C]hildren have a very difficult time overriding the inherent authority that an adult has in their lives."

Keith Delancey, a director and counselor at Kid's Reach in Jacksonville, N.C., who had been working with Thomas since September 2005 on another issue and then the issue of sex abuse, also

testified about his interaction with Thomas. Delancey testified that Thomas indicated the abuse occurred over a period of two and a half years and that it happened a lot. Delancey testified that according to Thomas these events would occur when Thomas's mother was asleep or in the shower. Delancey stated Thomas was bribed with CD's, money, and Yugioh cards. Delancey also testified to Thomas's statements that he had been asked to have sexual contact with dogs.

Another juvenile, Kathy[2]—who at the time of trial was a seventeen year old girl, testified that she had known defendant from about the time she was two. Defendant had dated Kathy's mother, and from the time Kathy was three or four, defendant lived with her and her mother. Kathy testified that when she was about five, she would come home from school and only defendant would be at home waiting for her. Kathy testified that defendant would take her into a bedroom, remove her underwear, and rub her "private parts." Defendant would kiss her and lick "[Kathy's] vagina and . . . butt." Kathy testified that this occurred many times, at different times of day, in a bedroom or in the living room.

Kathy testified that defendant attempted to have intercourse with her but was unsuccessful. So, defendant resorted to "acting like he was having sex" with her—instructing her to cross her legs while defendant placed his penis between them. Kathy testified that on one occasion defendant was dog sitting for a relative. Kathy testified that defendant pulled her underwear down and "began to lick [her] privates. And he called the dog over and had the dog lick [Kathy], too." At the time, Kathy was seven. Kathy testified that once when defendant was committing a sex act upon her defendant's mother walked in. Kathy testified that defendant said, "Get out," and his mother left.

Kathy testified that defendant molested her from the time she was five until she was almost eleven. It ended only when Kathy's mother, Kathy, and Kathy's little sister ran away in the middle of the night.

Defendant's mother, Eva Zinkand Sundeck (Sundeck), testified on defendant's behalf. On cross-examination, Sundeck denied observing any sexual impropriety by her son. About the incident to which Kathy testified—in which Sundeck walked in on defendant molesting Kathy—Sundeck testified that, at the time, she was living with defendant, Kathy, and Kathy's mother and she "heard a noise like the [baby's] crib wheels moving. . . . [She] got up to see if the baby was

---

2. "Kathy" is a pseudonym.

moving the crib, and . . . [defendant] came, said 'Don't worry, I'll pat her on the back.' And that was that. [Sundeck] went back to sleep . . . ." On cross examination, Sundeck acknowledged that Kathy told her she had been raped.

The State also questioned Sundeck regarding a communication she allegedly made to her youngest son's wife informing her that when defendant was fourteen he molested his five year old sister. Though Sundeck did not recall informing her daughter-in-law about the molestation of Sundeck's daughter, Sundeck testified that back in 1979 or 1980 she had taken her five year old daughter to a hospital where it was determined the daughter had contracted gonorrhea. Sundeck's daughter was taken to a rape center, and Sundeck testified that her daughter identified defendant as the person who molested her.

Sundeck's daughter, defendant's sister, Michelle,[3] also testified. On cross-examination, Michelle testified that when she was five and a half she was molested by defendant, but a court found defendant not guilty. Michelle testified that defendant fondled her. Michelle testified that she told her mother about being molested.

A jury found defendant guilty of three counts of statutory sex offense against a victim who was thirteen, fourteen or fifteen years old; taking indecent liberties with a child; and two counts of crime against nature. Defendant was sentenced to several consecutive active terms of imprisonment followed by an additional probationary sentence to begin at the expiration of the active sentences. Based on the State's oral motion made at the time of sentencing, the trial court also found and ordered that defendant be classified as a sexually violent predator. Defendant appealed.

---

On appeal, defendant questions whether the trial court erred by (I) overruling defendant's objection to allow testimony regarding acts defendant allegedly committed over twenty years earlier and (II) finding that defendant is a sexually violent predator.

I

[1] Defendant first questions whether the trial court erred in overruling his objection to the testimony of several witnesses who testified to an alleged act of sexual misconduct between defendant and his sister, Michelle, occurring in 1979 or 1980. Defendant argues this

---

3. "Michelle" is also a pseudonym.

testimony was inadmissible because he was acquitted of the charges stemming from the alleged molestation, and even if not, the conduct for which he was accused occurred twenty years ago and was too remote in time to be relevant. Defendant argues the introduction of this evidence was highly prejudicial and amounts to reversible error.

We first note that defendant called and examined his sister as a direct witness. The evidence of molestation of his sister was elicited on cross-examination in a proper attempt to test the credibility of defendant's witness. Moreover, when defendant requested that the trial court give a Rule 404(b) instruction regarding Michelle's testimony, the trial court did so.

Additionally, in light of the overwhelming evidence, as detailed earlier, of defendant's guilt, defendant cannot show prejudice in the trial court's admission of the challenged evidence as it would have no probable impact on the jury's decision. *See State v. Locklear*, 172 N.C. App. 249, 260, 616 S.E.2d 334, 341-42 (2005) (citation omitted) ("we find there would be no probable impact on the jury's decision in light of other overwhelming evidence of defendant's guilt"). As detailed earlier in the opinion, the State presented strong direct evidence of defendant's guilt as to the charges of statutory sex offense against a victim who was thirteen, fourteen or fifteen years old, crimes against nature, and taking indecent liberties with a child. Accordingly, defendant's assignment of error is overruled.

II

[2] Defendant next argues, and the State concedes, the trial court erred by ruling that defendant is a sexually violent predator.

Under North Carolina General Statutes, Article 27A, Sex Offender and Public Protection Registration Programs, section 14-208.6A, lifetime registration requirements for criminal offenders, our General Assembly states its objective to "establish a more stringent set of registration requirements for recidivists, persons who commit aggravated offenses, and for a subclass of highly dangerous sex offenders who are determined by a sentencing court with the assistance of a board of experts to be sexually violent predators." N.C. Gen. Stat. § 14-208.6A (2007). To accomplish that objective, our General Assembly established a registration program for sexually violent predators. *See* N.C. Gen. Stat. § 14-208.6A (2007).

Under North Carolina General Statute section 14-208.20, the classification of a sexually violent predator requires the district attorney

to file notice of his or her intent to seek the classification within the time provided for pretrial motions under G.S. § 15A-952 or later with the allowance of the trial court for good cause shown. N.C. Gen. Stat. § 14-208.20(a) (2007).

> Prior to sentencing a person as a sexually violent predator, the court shall order a presentence investigation in accordance with G.S. 15A-1332(c). However, the study of the defendant and whether the defendant is a sexually violent predator shall be conducted by a board of experts selected by the Department of Correction.

N.C. Gen. Stat. § 14-208.20(b) (2007). After the board of experts has conducted a study and generates a presentence report,

> the court shall hold a sentencing hearing in accordance with G.S. 15A-1334. At the sentencing hearing, the court shall, after taking the presentencing report under advisement, make written findings as to whether the defendant is classified as a sexually violent predator and the basis for the court's findings.

N.C. Gen. Stat. § 14-208.20(c) (2007).

Here, there is no indication the State gave notice of its intent to classify defendant as a sexually violent predator, no indication there was an investigation by a board of experts, and no written findings by the trial court as to why defendant was to be classified as a sexually violent predator or a basis for the findings. Accordingly, the trial court's ruling which classifies defendant as a sexually violent predator is vacated and the matter is remanded to the trial court for the entry of orders in accordance with this opinion.

No error in part; vacated in part; and remanded.

MARTIN, C.J. and ARROWOOD, J. concur.