**STATE v. GREEN**

[229 N.C. App. 121 (2013)]

STATE OF NORTH CAROLINA
v.
DARIUS GREEN

No. COA12-1466

Filed 20 August 2013

1. **Evidence—prior crimes or bad acts—robbery—no prejudice**

    The trial court did not err in a robbery with a dangerous weapon case by admitting evidence of a Holiday Inn robbery to which defendant had previously pled guilty. Even assuming, *arguendo*, that the evidence regarding the similarities between the robberies was insufficient for the trial court to allow the admission of the evidence pursuant to Rule 404(b), defendant failed to show how he was prejudiced by the admission of the evidence.

2. **Sexual Offenses—first-degree—engaging in a sexual act—forcing victim to self-penetrate**

    The trial court did not err by denying defendant's motion to dismiss a first-degree sex offense charge. The act of forcing a victim to self-penetrate constitutes engaging in a sexual act with another person and against the will of the other person. Defendant's assertion that he did not engage in a sexual act with the victim because he did not make physical contact with her therefore failed.

3. **Satellite-Based Monitoring—aggravated offense—elements of the conviction offense**

    The trial court erred in ordering lifetime sex offender registration and lifetime satellite-based monitoring ("SBM") for defendant. The determination of aggravated offense triggering lifetime registration and SBM is limited to considering only the elements of the conviction offense. As penetration is not a required element of first-degree sexual offense, defendant was not convicted of an aggravated offense.

    Appeal by defendant from judgments entered 3 August 2012 by Judge W. Allen Cobb, Jr. in New Hanover County Superior Court. Heard in the Court of Appeals 22 May 2013.

    *Attorney General Roy Cooper, by Special Deputy Attorney General Daniel Snipes Johnson, for the State.*

    *Appellate Defender Staples Hughes, by Assistant Appellate Defender Kathleen M. Joyce, for defendant-appellant.*

CALABRIA, Judge.

Darius Green ("defendant") appeals from judgments entered upon jury verdicts finding him guilty of first-degree burglary, first-degree sexual offense, three counts of robbery with a dangerous weapon ("RWDW"), and assault with a deadly weapon inflicting serious injury ("AWDWISI"). We find no error in part and reverse and remand in part.

## I. Background

On 20 September 2011, after approximately 1:00 a.m., two men ("the men") entered a residence on Tenth Street in Wilmington, North Carolina, and held M.C. ("Mary"),[1] her boyfriend and three minor children at gunpoint in one of the bedrooms ("the home invasion"). The men wore black hooded sweatshirts ("hoodies"), the lower portions of the men's faces were covered, and one of the men carried a gun. The man with the gun asked Mary's sixteen-year-old son ("the son") where "the money" was and forced him into a different bedroom. When the son did not find the money, the man hit him in the face. As a result, the son sustained injuries to his nose, face, and one of his teeth.

One of the men took Mary into the kitchen, pointed a gun to her head and ordered her to undress. Once Mary was undressed, while still pointing a gun to her head, the man ordered her to insert her own fingers into her vagina and "play with herself." Mary reluctantly complied.

When the men left, they took cash, jewelry, cell phones, keys, and a laptop computer. The family contacted law enforcement from a neighbor's house. When officers arrived, Mary described the men as "tall, lean black guys" wearing hoodies and masks. Mary and her son had known defendant for several years and Mary's son had spent some time with defendant. Both Mary and her son identified defendant as one of the men and the son provided "great detail" to the officers about how he recognized the man who hit him. Specifically, the son told the officers that the object he was hit with felt like a gun and that he recognized defendant's nose, eyes, and voice.

On 31 October 2011, defendant was indicted for first-degree burglary, first-degree sex offense, second-degree kidnapping, AWDWISI, two counts of first-degree kidnapping and three counts of armed robbery for the home invasion.

---

1. We will use the pseudonym "Mary" throughout this opinion to protect the victim's privacy.

At trial in New Hanover Superior Court, both Mary and her son testified for the State and identified defendant as one of the assailants in the home invasion. The State also sought to introduce evidence of a robbery at a Holiday Inn in Wilmington, North Carolina ("Holiday Inn robbery") that occurred on 22 September 2011. Two days after the home invasion and robbery, a man ("the robber") wearing a black hoodie and a mask entered the lobby of the Holiday Inn and took money from the cash drawer. Defendant pled guilty to the Holiday Inn robbery on 17 July 2012. After viewing a surveillance video of the Holiday Inn robbery and hearing three witnesses in a *voir dire* proceeding regarding admissibility under Evidence Rule 404(b), the trial court entered an order allowing the State to introduce evidence of the Holiday Inn robbery. At trial, the State introduced the surveillance video footage and testimony from four witnesses regarding the Holiday Inn robbery.

The jury entered verdicts finding defendant guilty of first-degree burglary, first-degree kidnapping, first-degree sexual offense, AWDWISI, and three counts of RWDW. The jury found defendant not guilty of one count of first-degree kidnapping and one count of second-degree kidnapping. The court arrested judgment on the jury verdict of guilty of first-degree kidnapping. Defendant was sentenced to 87 to 114 months for first-degree burglary, 316 to 389 months for first-degree sex offense, and 87 to 114 months for one count of RWDW. These sentences were ordered to be served concurrently. Defendant was sentenced to 87 to 114 months for the second count of RWDW to be served at the expiration of the previous sentence. Defendant was sentenced to 87 to 114 months for the third count of RWDW and 34 to 50 months for AWDWISI. These two sentences were ordered to be served concurrently, but the consolidated sentence was ordered to run at the expiration of the previous RWDW judgment. After the trial court made findings that defendant had been convicted of a sexually violent offense and that the offense was an aggravated offense, the trial court ordered that upon defendant's release from incarceration, he was to register as a sex offender for life and also to enroll in lifetime satellite-based monitoring ("SBM"). Defendant appeals.

## II. 404(b) Evidence

[1] Defendant argues that the trial court's admission of evidence of the Holiday Inn robbery under Rule 404(b) was prejudicial error because it was not sufficiently similar to the home invasion. We disagree.

On appeal, we review the trial court's order regarding its 404(b) ruling to determine "whether the evidence supports the findings and

whether the findings support the conclusions. We review de novo the legal conclusion that the evidence is, or is not, within the coverage of Rule 404(b)." *State v. Beckelheimer*, 366 N.C. 127, 130, 726 S.E.2d 156, 159 (2012). Subsequently, we "review the trial court's Rule 403 determination for abuse of discretion." *Id.*

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." N.C. Gen. Stat. § 8C–1, Rule 404(b) (2011). However, the evidence may "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident." *Id.* Rule 404(b) is a

> general rule of *inclusion* of relevant evidence of other crimes, wrongs or acts by a defendant, subject to but *one exception* requiring its exclusion if its *only* probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged.

*State v. Coffey*, 326 N.C. 268, 278–79, 389 S.E.2d 48, 54 (1990).

"To effectuate these important evidentiary safeguards, the rule of inclusion described in *Coffey* is constrained by the requirements of similarity and temporal proximity." *State v. Al–Bayyinah*, 356 N.C. 150, 154, 567 S.E.2d 120, 123 (2002) (citation omitted). "[T]he similarities between the two situations" do not need to " 'rise to the level of the unique and bizarre.' Rather, the similarities simply must tend to support a *reasonable* inference that the same person committed both the earlier and later acts." *State v. Stager*, 329 N.C. 278, 304, 406 S.E.2d 876, 891 (1991) (internal citation omitted). The similarities, however, must be more than generic characteristics " 'inherent to most' crimes of that type" to establish sufficient similarity. *State v. Carpenter*, 361 N.C. 382, 390, 646 S.E.2d 105, 111 (2007) (citation omitted).

In the instant case, defendant previously pled guilty to the Holiday Inn robbery in federal court. At trial, the State sought to introduce evidence regarding the Holiday Inn robbery to show "proof of identity, intent, motive, opportunity, preparation, knowledge, modus operandi, and a common scheme or plan." After hearing evidence on *voir dire*, the trial court entered an order allowing the State to introduce the evidence.

The trial court's findings in the order admitting evidence of the Holiday Inn robbery included multiple similarities between the robberies. Specifically, both robberies were armed robberies which occurred

within two days of each other, the perpetrators in both robberies wore black hoodies and dark fabric covering the bottom portion of their faces, immediately demanded money upon entering the buildings, utilized a black semi-automatic handgun in a similar manner by "pushing" it to the heads of the victims, restrained victims in a similar manner, and moved victims from place to place during the course of the crimes, searching for money. Defendant contends that these similarities were "generic to the act of robbery" and insufficient to establish substantial evidence of similarity. *Al–Bayyinah*, 356 N.C. at 155, 567 S.E.2d at 123.

Even assuming, *arguendo*, that defendant is correct that the evidence regarding the similarities between the robberies is insufficient for the trial court to allow the admission of the evidence pursuant to Rule 404(b), defendant bears the burden of showing that any error by the trial court was prejudicial. *See State v. LePage*, 204 N.C. App. 37, 43, 693 S.E.2d 157, 162 (2010). "A defendant is prejudiced by the trial court's evidentiary error where there is a 'reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises.' " *State v. Miles*, __ N.C. App. __, __, 730 S.E.2d 816, 827 (2012), *aff'd per curiam*, __ N.C. __; __ S.E.2d __ (2013) (citation omitted). Where there was overwhelming evidence of the defendant's guilt, this Court has held that the "defendant [could] not show prejudice in the trial court's admission of the challenged evidence as it would have no probable impact on the jury's decision." *State v. Zinkand*, 190 N.C. App. 765, 771, 661 S.E.2d 290, 293 (2008) (citation omitted); *see also LePage*, 204 N.C. App. at 44, 693 S.E.2d at 162.

In the instant case, defendant claims that "[g]iven the weaknesses in the identification of the masked assailants at [Mary's] house, two of whom were never identified, the evidence on the Holiday Inn robbery likely played a key role in the jury's determination of [defendant's] guilt." However, the State's evidence showed that on the night of the home invasion, both Mary and her son identified defendant as one of the men. Mary and her son had known defendant for several years, defendant referred to Mary as "aunt," and Mary's son had spent some time with defendant. The son provided "great detail" to law enforcement about how he recognized the man with a gun as defendant, including that he recognized defendant's nose, eyes, and voice. At trial, both Mary and her son also identified defendant as the man. Mary testified that because the scarf covering defendant's face was not thick, she could see through it, and stated that she could see defendant's eyes and nose, as well as hear his voice.

The State also offered evidence that not only did defendant know that Mary's brother hid money at her house, but when Mary told the men that the money was at her mother's house, the men left the house and shortly thereafter someone attempted to break into Mary's mother's house. While it is possible that others could have been privy to this information, defendant's prior relationship with the family supports an inference that he was the perpetrator.

We determine from the evidence of defendant's knowledge of the family's habits and the evidence from two eyewitnesses who knew defendant prior to the home invasion, that there is not a reasonable possibility that the jury would have reached a different result had the contested evidence not been admitted at trial. *See, e.g., State v. Castaneda,* __ N.C. App. __, __, 715 S.E.2d 290, 296 (2011) (finding any error was harmless where the evidence against the defendant included an eyewitness's testimony at trial that the defendant attacked and stabbed the victim). Therefore, assuming, *arguendo*, that admission of the 404(b) evidence was error, defendant has failed to show how he was prejudiced by the admission of the evidence. We determine any error was harmless.

### III. Motion to Dismiss

**[2]** Defendant also argues that the trial court erred when it denied defendant's motion to dismiss the first-degree sex offense charge, asserting that defendant did not engage in a sexual act with the victim because he did not come into contact with her. We disagree.

"This Court reviews the trial court's denial of a motion to dismiss *de novo*." *State v. Smith,* 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007) (citation omitted). " 'Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense.' " *State v. Fritsch,* 351 N.C. 373, 378, 526 S.E.2d 451, 455 (2000) (citation omitted). The trial court must consider the evidence "in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." *State v. Rose,* 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994) (citation omitted).

"A person is guilty of a sexual offense in the first-degree if the person engages in a sexual act ... [w]ith another person by force and against the will of the other person ...." N.C. Gen. Stat. § 14-27.4(a) (2011). "Sexual act ... means the penetration, however slight, by any object into the genital or anal opening of another person's body ...." N.C. Gen. Stat. § 14-27.1(4) (2011). The North Carolina Supreme Court has held that "sexual act"

encompasses "every penetration other than vaginal intercourse" and thus, the term "any object" embraces "parts of the human body as well as inanimate or foreign objects." *State v. Lucas*, 302 N.C. 342, 346, 275 S.E.2d 433, 436 (1981) (holding that the defendant's alleged insertion of his fingers into the victim's vagina constituted a sexual act because the defendant's fingers were within the definition of "any object").

There are no North Carolina cases determining whether a victim's forced penetration of her own vagina with her own fingers constitutes first-degree sexual offense. However, cases from other states regarding this issue provide some guidance. The Florida Court of Appeals for the Third District has held that "the coerced insertion of a woman's own fingers in her intimate body orifice, against her will and at the command of a person that is intimidating her," was prohibited by a Florida statute defining "sexual battery" as "oral, anal, or vaginal penetration by, or union with, the sexual organ of another or the anal or vaginal penetration of another *by any other object*." *State v. Kirby*, 625 So. 2d 51, 55 (Fla. Dist. Ct. App. 1993) (citing Fla. Stat. § 794.011(1)(h) (1989)). In addition, a California court has held that a statute prohibiting the penetration of genital or anal openings by foreign objects also included cases of forced self-penetration. *People v. Keeney*, 29 Cal. Rptr. 2d 451 (3d Dist. 1994).

Defendant contends that since Mary touched herself, the jury could not find that he "engaged" in a sexual act *with* Mary within the meaning of the statute. First-degree sexual offense in North Carolina requires that the defendant "engages in a sexual act ... [w]ith another person." N.C. Gen. Stat. § 14-27.4(a) (2011). When statutory language is clear and unambiguous, the Court "must conclude that the legislature intended the statute to be implemented according to the plain meaning of its terms." *State v. Watterson*, 198 N.C. App. 500, 505, 679 S.E.2d 897, 900 (2009) (citation omitted). *Black's Law Dictionary* 608 (9th ed. 2009) defines "engage" as "[t]o employ or involve oneself; to take part in; to embark on." "With" can be defined as "a function word [used] to indicate a participant in an action, transaction, or arrangement ...." *Merriam-Webster's Collegiate Dictionary* 1438 (11th ed. 2007).

In the instant case, in the light most favorable to the State, the evidence showed that defendant forced Mary, at gunpoint, to remove her clothing and insert her own fingers into her vagina. While defendant did not physically touch Mary, he was "involved" in that he coerced her to touch herself. Defendant was not merely an observer or bystander, but rather he participated in the action by directing Mary.

Given that the text of North Carolina statutes do not explicitly exclude instances such as the one in this case and the persuasive trend in other courts is to recognize coerced self-penetration as a sexual offense, we hold that the act of forcing a victim to self-penetrate constitutes "engag[ing] in a sexual act ... with another person ... and against the will of the other person." N.C. Gen. Stat. § 14-27.4(a) (2011). Defendant's assertion that he did not engage in a sexual act with Mary because he did not make physical contact with her therefore fails. Accordingly, we find no error in the trial court's denial of defendant's motion to dismiss the first-degree sex offense charge.

## IV. Lifetime Registration and SBM

**[3]** Defendant argues that the trial court erred in ordering lifetime sex offender registration and lifetime satellite-based monitoring ("SBM"). We agree.

As an initial matter, we note that defendant filed a petition for writ of *certiorari*. Defendant conceded that although he properly gave oral notice of appeal in open court, he failed to file written notice of appeal as required by *State v. Brooks*, 204 N.C. App. 193, 194-95, 693 S.E.2d 204, 206 (2010) (holding that the defendant was required to file a written notice of appeal from SBM hearings because an order for SBM is a civil order). Therefore, both defendant and the State recognize that defendant's "right to prosecute [his] appeal has been lost by failure to take timely action." N.C. R. App. P. 21(a)(1) (2012). Defendant requests that we grant his petition for writ of *certiorari* pursuant to N.C. R. App. P. 21(a)(1). In our discretion, we grant defendant's petition.

N.C. Gen. Stat. § 14-208.40A requires that if an offender is classified as a sexually violent predator, is a recidivist, has committed an aggravated offense, or was convicted of the rape or sex offense of a child, the court shall order the offender to enroll in lifetime satellite-based monitoring. N.C. Gen. Stat. § 14-208.40A (2011). Additionally, "[a] person who is a State resident and who has a reportable conviction shall be required to maintain registration with the sheriff of the county where the person resides." N.C. Gen. Stat. § 14-208.7 (2011). "Aggravated offense" is defined as

> any criminal offense that includes either of the following: (i) engaging in a sexual act involving vaginal, anal, or oral penetration with a victim of any age through the use of force or the threat of serious violence; or (ii) engaging in a sexual act involving vaginal, anal, or oral penetration with a victim who is less than 12 years old.

N.C. Gen. Stat. § 14-208.6(1a) (2011).

When a trial court determines whether a crime constitutes an aggravated offense, it "is only to consider the elements of the offense of which a defendant was convicted and is not to consider the underlying factual scenario giving rise to the conviction. In other words, the elements of the offense must fit within the statutory definition of aggravated offense." *State v. Boyett,* __ N.C. App. __, __, 735 S.E.2d 371, 380 (2012) (internal quotations and citations omitted). In *Boyett,* this Court held that a second-degree sexual offense was not an aggravated offense to support lifetime SBM because penetration was not a required element of second-degree sex offense conviction. *Id.* at __, 735 S.E.2d at 380-81.

In the instant case, the jury found defendant guilty of first-degree sexual offense. Under North Carolina statutes, "[a] person is guilty of a sexual offense in the first degree if the person engages in a sexual act ... [w]ith another person by force and against the will of the other person, and ... [e]mploys or displays a dangerous or deadly weapon[.]" N.C. Gen. Stat. § 14-27.4(a) (2011). " 'Sexual act' means cunnilingus, fellatio, analingus, or anal intercourse ... [or] the penetration, however slight, by any object into the genital or anal opening of another person's body ...." N.C. Gen. Stat. § 14-27.1(4) (2011).

Since our determination of "aggravated offense" triggering lifetime registration and SBM is limited to considering only the elements of the conviction offense, and penetration is not a required element of first-degree sexual offense, defendant was not convicted of an aggravated offense. Therefore, the trial court improperly ordered lifetime sex offender registration and lifetime SBM.

## V. Conclusion

We find no error in the trial court's order admitting the evidence of the Holiday Inn robbery and the trial court's denial of defendant's motion to dismiss the first-degree sex offense. However, the trial court's order requiring defendant's lifetime registration as a sex offender and lifetime enrollment in SBM based on first-degree sexual offense, which is not an aggravated offense, is reversed and remanded.

No error in part, reversed and remanded in part.

Judges STEELMAN and McCULLOUGH concur.