HAMPSON, Judge.
Factual and Procedural Background
David Lee Brinkley (Defendant) appeals from his convictions for First-Degree Sexual Offense and First-Degree Kidnapping. Additionally, we allow Defendant's Petition for Writ of Certiorari to review the trial court's Judicial Findings and Order for Sex Offenders.
The evidence presented at trial tends to show the following:
Defendant and the victim, V.B.[1] , were married. On 29 July 2015, V.B. returned home from work to find Defendant had arranged for a date night. After Defendant and V.B. dined at a restaurant, Defendant insisted on stopping to buy a new SD card for his video camera. The pair returned home to watch a movie, and V.B. went to the bedroom to sleep. Defendant entered the room holding a pair of handcuffs, asking if V.B. "wanted to try something kinky." V.B. declined, but Defendant approached, and over V.B.'s protests, restrained her with the handcuffs and then tied V.B.'s hands and feet to the bed. Defendant punched V.B. in the head and told her that he would not kill her if she did what he said. Defendant brandished a BB gun resembling a pistol and repeatedly threatened to shoot V.B. At one point, Defendant shot the gun, hitting the wall by the side of V.B.'s head.
Defendant used a video camera to record portions of the incident. Footage from Defendant's camera shown to the jury shows Defendant repeatedly threatening V.B.'s life telling her she "will die tonight" if she tries anything. Defendant is seen pointing the BB gun at V.B. and tells her he has just replaced the CO2 cartridge threatening to shoot her at close range, such that the shot would pierce her skin.
Defendant stated his original plan was to kill V.B. and then himself. Defendant turned on a laptop, and proceeded to question V.B. about various photographs and her social media activity. He claimed he would force V.B. to watch him kill himself as punishment for her "lying" and being "unfaithful" to him. He also threatened V.B. while she was tied to the bed with an ASP baton, of a type typically used by law enforcement officers, threatening to hit V.B. with it if she tried to move. Defendant placed the baton on the bed near V.B.
At some point, Defendant released V.B. to use the restroom. When she returned, he forced her to perform oral sex on him, while recording with the camera. Defendant then forced V.B. to watch while he made videotaped "last will and testaments." With V.B. once again tied to the bed and handcuffed, Defendant left the room, and returned with a hammer and extension cord. Defendant made a makeshift noose and began attempting to hang himself from a doorframe. While Defendant was distracted with his apparent suicide attempt, V.B. was able to escape her restraints and flee. Defendant pursued V.B. into the yard and attempted to drag her back to the house, but V.B. was able to escape to a neighbor's home.
The neighbor, William Barham (Barham), was awakened by the sound of a woman screaming. The sound came from the front yard of the home Defendant shared with V.B. Barham left his home to investigate and saw Defendant, who threatened Barham with a gun. When Barham returned to his home, he found his mother with V.B. in the kitchen, and law enforcement officers arriving.
Officer Alan Lee (Officer Lee), the officer dispatched to Barham's home, spoke with Barham and V.B. Officer Lee helped remove the handcuffs which were still on V.B.'s wrists. He called for backup and approached Defendant's home. When Officer Lee came to the door, Defendant threatened to kill himself. Officer Lee could see a gun in Defendant's hand, and implored Defendant not to hurt himself. Defendant let Officer Lee into the home, and Officer Lee took a BB gun from Defendant. Other officers soon entered the home, and Defendant was arrested and taken to the hospital.
Defendant was indicted for Second-Degree Kidnapping, Crime Against Nature, and First-Degree Sexual Offense. A superseding indictment was later entered, amending the charge of Crime Against Nature and upgrading the kidnapping charge to first-degree. At trial, the State voluntarily dismissed the charge of Crime Against Nature.
At the close of the State's evidence, Defendant moved to dismiss the kidnapping and sex offense charges. After hearing the arguments of counsel, the trial court denied these motions. Defendant declined to present evidence.
The jury returned verdicts finding Defendant guilty of First-Degree Kidnapping and First-Degree Sexual Offense. Defendant then pleaded guilty to the aggravating factors of (1) using a deadly weapon and (2) taking advantage of a position of trust or confidence. As to First-Degree Sexual Offense, the trial court found these aggravating factors outweighed the mitigating factors and sentenced Defendant in the aggravated range to a minimum of 311 months and a maximum of 434 months. The trial court sentenced Defendant in the presumptive range for First-Degree Kidnapping to a minimum of 83 months and a maximum of 112 months.
Additionally, the trial court entered a written Judicial Findings and Order for Sex Offenders determining Defendant was convicted of a reportable conviction and further found the sex offense conviction was a sexually violent offense and an aggravated offense. The trial court therefore ordered Defendant to register as a sex offender for the remainder of his natural life and to enroll in lifetime Satellite-Based Monitoring (SBM).
Appellate Jurisdiction
Defendant gave notice of appeal from his criminal convictions in open court and his appeal of those convictions is before us under N.C. Gen. Stat. § 7A-27(b) and N.C. Gen. Stat. § 15A-1444. Defendant, however, did not timely appeal the trial court's civil order requiring him to register as a sex offender and enroll in satellite-based monitoring, and has instead filed a Petition for Writ of Certiorari seeking review of this matter. We grant Defendant's Petition.
Issues
The dispositive issues in this case are: (I) Whether there is sufficient evidence to support the denial of Defendant's Motions to Dismiss the charges against him; (II) Whether there exists a sufficient factual basis to support Defendant's guilty plea to the aggravating factor of use of a deadly weapon in sentencing for First-Degree Sexual Offense; and (III) Whether the trial court erred by classifying First-Degree Sexual Offense as an "aggravated offense" for purposes of triggering lifetime sex offender registration and Satellite-Based Monitoring.
Analysis
I. Denial of Defendant's Motions to Dismiss
Defendant first contends the trial court erred by denying his Motions to Dismiss the charges of First-Degree Sexual Offense and First-Degree Kidnapping. We disagree.
A. Standard of Review
"This Court reviews the trial court's denial of a motion to dismiss de novo ." State v. Smith , 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007).
" 'Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied.' " State v. Fritsch , 351 N.C. 373, 378, 526 S.E.2d 451, 455 (quoting State v. Barnes , 334 N.C. 67, 75, 430 S.E.2d 914, 918 (1993) ), cert. denied , 531 U.S. 890, 148 L.Ed. 2d 150 (2000).
"In making its determination, the trial court must consider all evidence admitted, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." State v. Rose , 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994), cert. denied , 515 U.S. 1135, 132 L.Ed. 2d 818 (1995).
B. First-Degree Sexual Assault
N.C. Gen. Stat. § 14-27.4(a)(2), the statute applicable at the time of the offense, provided in relevant part, a person commits First-Degree Sexual Offense by engaging in a sexual act:
With another person by force and against the will of the other person, and:
a. Employs or displays a dangerous or deadly weapon or an article which the other person reasonably believes to be a dangerous or deadly weapon; or
b. Inflicts serious personal injury upon the victim or another person; or
c. The person commits the offense aided and abetted by one or more other persons.
N.C. Gen. Stat. § 14-27.4(a)(2) (2015)[2] ; State v. Williams , 201 N.C. App. 161, 180, 689 S.E.2d 412, 422 (2009). Here, the case was submitted to the jury solely under subpart (a) and the jury was instructed it could find Defendant guilty of First-Degree Sexual Offense if it found:
[Defendant] employed or displayed an object that [V.B.] reasonably believed was a dangerous or deadly weapon. A dangerous or deadly weapon is a weapon which is likely to cause death or serious bodily injury.
Defendant contends the evidence was insufficient to permit the jury to find either the BB gun or baton to be dangerous or deadly weapons. Focusing his arguments primarily on the BB gun, Defendant points to case law holding a BB rifle was not "a firearm or other dangerous weapon" as a matter of law for purposes of the offense of Robbery with Firearms or Other Dangerous Weapons under N.C. Gen. Stat. § 14-87. See State v. Alston , 305 N.C. 647, 650, 290 S.E.2d 614, 616 (1982). Notably, though, in the same armed robbery context, this Court has declined to hold a BB gun, as a matter of law, can never be a dangerous weapon. State v. Fleming , 148 N.C. App. 16, 24, 557 S.E.2d 560, 565 (2001).
In this case, we need not reach the question of whether the BB gun at issue was, in fact, a deadly or dangerous weapon. This is because First-Degree Sexual Offense requires only that the victim "reasonably believe" the object employed or displayed during the offense was a dangerous or deadly weapon. N.C. Gen. Stat. § 14-27.4. For example, our Supreme Court recognized for purposes of First-Degree Rape and First-Degree Sexual Offense: "A statement that the deadly weapon element of these offenses would be met if the victim reasonably believed a fake gun to be a dangerous or deadly weapon" was a correct statement of law. State v. McKinnon , 306 N.C. 288, 297, 293 S.E.2d 118, 124 (1982). Similarly, in State v. Workman , the defendants were convicted of First-Degree Sexual Offense by displaying or employing a pencil and a safety razor. Based upon the defendants' threatened use of those objects, including the threatened use of the pencil to stab and kill the victim, our Supreme Court held the questions of whether the pencil and the razor constituted dangerous or deadly weapons or were articles which the victim "reasonabl[y] believed to be ... dangerous or deadly. ..." were questions for the jury. State v. Workman , 309 N.C. 594, 601, 308 S.E.2d 264, 268 (1983) (citation and quotation marks omitted); see also State v. Johnson , 304 N.C. 680, 688, 285 S.E.2d 792, 797 (1982) (Defendant's use of a ballpoint pen to threaten victim created a jury question on whether he employed or displayed a dangerous or deadly weapon).
The evidence taken in the light most favorable to the State demonstrates as Defendant restrained V.B., he punched her in the head and told her he would not kill her if she did what he said. V.B. testified she believed Defendant was going to kill her. Defendant brandished the BB gun and threatened to shoot V.B. between the eyes if she tried anything, even firing the BB gun at one point hitting the wall by V.B.'s head. Video evidence admitted and played for the jury from Defendant's camera shows Defendant repeatedly threatening V.B.'s life telling her she "will die tonight" if she tries anything. Defendant is seen pointing the BB gun at V.B. and tells her he has just replaced the CO2 cartridge, threatening to shoot her at close range, such that the shot would go through her skin. V.B. testified Defendant had the gun with him during the entire incident. In addition to the BB gun, Defendant also brandished the baton threatening to hit V.B. with it if she tried to move. This Court has held that a "police nightstick," similar to the baton at issue, may be considered a deadly weapon. State v. Buchanan , 28 N.C. App. 163, 166, 220 S.E.2d 207, 209 (1975), disc. review denied , 289 N.C. 452, 223 S.E.2d 161 (1976). This was also captured on Defendant's own video. During the incident, Defendant forced V.B. to perform fellatio without her consent. V.B. testified she had made her mind up she had to do whatever he asked because she was afraid Defendant would hurt or kill her.
Considering all this evidence in the light most favorable to the State, and giving the State the benefit of all reasonable inferences, the evidence was sufficient to submit to the jury the question of whether V.B. reasonably believed the weapons - to wit: the BB gun and/or baton - displayed or employed against her were dangerous or deadly weapons. Consequently, the trial court did not err in denying Defendant's Motion to Dismiss the charge of First-Degree Sexual Offense.
C. First-Degree Kidnapping
A person is guilty of kidnapping if they "unlawfully confine, restrain, or remove from one place to another," a person without consent for the purpose of, inter alia , "[d]oing serious bodily harm to or terrorizing the person so confined, restrained or removed or any other person[.]" N.C. Gen. Stat. § 14-39(a)(3) (2017). Kidnapping is in the first-degree if the person kidnapped "either was not released by the defendant in a safe place or had been seriously injured or sexually assaulted[.]" N.C. Gen. Stat. § 14-39(b).
The trial court instructed the jury on the charge of First-Degree Kidnapping, including the element of purpose, as follows:
[Defendant] confined, restrained, or removed [V.B.] for the purpose of doing serious bodily injury to [V.B.] and terrorizing her.
On appeal, Defendant contends there was insufficient evidence he confined or restrained V.B. for the purpose of doing bodily injury to her. Defendant further contends because the jury was instructed it could find Defendant guilty on either a theory of serious bodily injury or terrorizing V.B., it is impossible to determine whether the jury found Defendant guilty pursuant to a theory unsupported by the evidence.
However, there was evidence at trial to support the State's position. Defendant punched V.B. in the face and bound V.B.'s hands and feet to the bed and placed tape over her mouth. After restraining V.B., Defendant admitted his original plan was to kill her and then himself. Defendant repeatedly threatened to assault V.B. that night, and had both the BB gun and a baton ready at his disposal. Defendant threatened V.B.'s life multiple times over the course of the incident which was predicated on Defendant's desire to punish V.B. for what he perceived to be her unfaithfulness. V.B. believed she was going to be killed. Defendant began the incident by asking if V.B. wanted to "try something kinky" and, ultimately, sexually assaulted V.B. Our Courts have previously upheld the denial of motions to dismiss a kidnapping charge for the purpose of doing "serious bodily harm" where the victim suffered a sexual assault. State v. Bonilla , 209 N.C. App. 576, 580, 706 S.E.2d 288, 292 (2011) (Motion to dismiss kidnapping charge properly denied where victim was beaten, bound and gagged, threatened with death, and sexually assaulted). Taken in the light most favorable to the State, this is evidence tending to show Defendant did, in fact, restrain V.B. for the purpose of inflicting serious bodily injury.
Moreover, Defendant does not contest the sufficiency of the evidence to show a purpose to terrorize V.B. "Terrorizing is defined as 'more than just putting another in fear. It means putting that person in some high degree of fear, a state of intense fright or apprehension.' " State v. Davis , 340 N.C. 1, 24, 455 S.E.2d 627, 639 (1995) (quoting State v. Moore , 315 N.C. 738, 745, 340 S.E.2d 401, 405 (1986) ). Here, Defendant restrained V.B. for the purpose of threatening her life and interrogating her over photographs and social media posts as punishment for her perceived unfaithfulness to him. His use of the BB gun and baton were clearly intended to terrorize. In addition to threatening V.B.'s life, Defendant also threatened to force V.B. to watch as he committed suicide, even recording video "last will and testaments" to his children with pre-addressed and stamped envelopes. See Moore , 315 N.C. at 745, 340 S.E.2d at 406 (evidence of threats of suicide by defendant along with threats against victim's life sufficient to support finding defendant intended to terrorize victim).
Again, considering this evidence in the light most favorable to the State, and giving the State the benefit of all reasonable inferences, the evidence is sufficient to submit to the jury whether Defendant confined, restrained or removed V.B. with the intent to do serious bodily injury or terrorize V.B. Consequently, the trial court did not err in denying Defendant's Motion to Dismiss the First-Degree Kidnapping charge.
II. Sentencing
Prior to sentencing, Defendant pleaded guilty to two aggravating factors: (1) the use of a deadly weapon at the time of the crime; and (2) taking advantage of a position of trust and confidence, including a domestic relationship, to commit the offense. N.C. Gen. Stat. § 15A-1340.16(d)(10), (15) (2017). As to the First-Degree Sexual Offense charge, the trial court found these aggravating factors outweighed the mitigating factors and sentenced Defendant in the aggravated range. On appeal, Defendant contends the trial court erroneously found the aggravating factor of use of a deadly weapon at the time of the crime where the State relied upon both the BB gun and baton as dangerous or deadly weapons to support the offense of First-Degree Sexual Assault.
A. Preservation for Appellate Review
As an initial matter, we address whether this issue is preserved for our review in light of Defendant's guilty plea to the aggravating factors. We are guided by our Supreme Court's recent decision in State v. Meadows , --- N.C. ----, 821 S.E.2d 402 (2018). In Meadows , the Supreme Court clarified that while N.C.R. App. P. 10(a)(1) does apply to preservation of alleged errors during a sentencing hearing, a formal objection is unnecessary to preserve a non-constitutional sentencing issue for appeal, as long as the issue was called to the sentencing court's attention in such fashion that the trial court knew or should have known the defendant's position. Meadows , --- N.C. at ----, 821 S.E.2d at 406. To be sure, here, this cuts against Defendant's contention the issue is preserved where Defendant pleaded guilty following an extensive written and verbal colloquy, and there was simply no way the trial court would have known or should have known Defendant or his trial counsel objected to the finding of the aggravating factor.
However, consistent with Defendant's position in this case, Meadows also recognized N.C. Gen. Stat. § 15A-1446(d)(18) provides an alternate and independent statutory basis for preserving non-constitutional sentencing issues even if those issues are not preserved in the trial court. Id .
Of course, Meadows did not address the specific situation here where not only did Defendant not object, but actually pleaded guilty to the aggravating factor he now challenges. However, this Court has previously held a defendant's stipulation to an aggravating factor does not preclude the defendant from seeking appellate review of the alleged error. State v. Bacon , 228 N.C. App. 432, 434, 745 S.E.2d 905, 907 (2013). In light of the Supreme Court's broad holding that non-constitutional sentencing issues are automatically preserved for appellate review by statute and our prior decision in Bacon , we conclude Defendant's argument here is preserved for appellate review. See e.g. , State v. Khan , 366 N.C. 448, 455-56, 738 S.E.2d 167, 172 (2013) (Supreme Court reviewed whether the evidence was sufficient to support an aggravated factor even though the defendant had stipulated to aggravating factors and the trial court met the statutory requirements for taking the plea). Accordingly, we address the merits of Defendant's argument on this issue.
B. Standard of Review
"[We review alleged sentencing errors for] 'whether [the] sentence is supported by evidence introduced at the trial and sentencing hearing.' " State v. Deese , 127 N.C. App. 536, 540, 491 S.E.2d 682, 685 (1997) (quoting N.C. Gen. Stat. § 15A-1444(a1) (Cum. Supp. 1996)).
C. Use of a Deadly Weapon as Aggravating Factor to First-Degree Sexual Offense
In stating the factual basis for finding the existence of the aggravating factor of the use of a deadly weapon under N.C. Gen. Stat. § 15A-1340.16(d)(10), the trial court stated:
And more specific for the record, in regards to the facts, I understand that with the deployment of two items that might be or could be or were determined by the jury to have been dangerous or deadly weapons, that the aggravating factor would be appropriate. Without considering that the jury may have -- or considering that the jury may have decided that one item was used, it will not be the same evidence for that aggravating factor[.]
"Evidence necessary to prove an element of the offense shall not be used to prove any factor in aggravation, and the same item of evidence shall not be used to prove more than one factor in aggravation." N.C. Gen. Stat. § 15A-1340.16(d). Where the record shows the trial court relied on evidence used to prove an element of the offense to also prove a factor in aggravation, this Court will remand for a new sentencing hearing. Bacon , 228 N.C. App. at 436, 745 S.E.2d at 908.
In this case, the trial court instructed the jury it could find Defendant guilty of First-Degree Sexual Offense if, inter alia , he "employed or displayed an object that [V.B.] reasonably believed was a dangerous or deadly weapon." The trial court did not instruct the jury specifically as to whether the jury was to consider whether the baton or the BB gun constituted the dangerous or deadly weapon. The jury's verdict does not establish whether it relied on the baton, BB gun, or both weapons in reaching its verdict. At trial, as it has on appeal, the State consistently contended that either weapon (or both) constituted a dangerous or deadly weapon sufficient to convict Defendant of First-Degree Sexual Offense.
Thus, the State used and relied upon evidence of both the baton and BB gun to prove the dangerous or deadly weapon element of First-Degree Sexual Offense. Therefore, the trial court could not rely upon this evidence to support a finding in aggravation, in particular where the jury was not instructed as to a particular weapon and made no express finding as to the weapon(s) upon which it relied. Consequently, the trial court erred in finding the aggravating factor under N.C. Gen. Stat. § 15A-1340.16(d)(10). Accordingly, we remand this case for resentencing. We note, on remand, the trial court may weigh the aggravating and mitigating factors in its sound discretion and, if appropriate, find one factor in aggravation outweighs more than one factor in mitigation and vice versa. State v. Norman , 151 N.C. App. 100, 104, 564 S.E.2d 630, 633 (2002).
III. Sex Offender Registration and Satellite-Based Monitoring
In his third argument, Defendant contends, and the State agrees, the trial court erred in ordering lifetime registration as a sex offender and lifetime enrollment in SBM. We agree.
A. Standard of Review
In reviewing the trial court's decision to impose SBM, "we review the trial court's findings of fact to determine whether they are supported by competent record evidence, and we review the trial court's conclusions of law for legal accuracy and to ensure that those conclusions reflect a correct application of law to the facts found." State v. Kilby , 198 N.C. App. 363, 367, 679 S.E.2d 430, 432 (2009) (citation omitted).
B. The Aggravated Offense Finding
A conviction for a "reportable offense" including a sexually violent offense triggers sex offender registration requirements. N.C. Gen. Stat. § 14-208.6(4). Here, First-Degree Sexual Offense constitutes a sexually violent offense. N.C. Gen. Stat. § 14-208.6(5). If a trial court further determines the offense is an "aggravated offense," the defendant is required to enroll in both lifetime sex offender registration, N.C. Gen. Stat. § 14-208.6A, and lifetime monitoring via SBM, N.C. Gen. Stat. § 14-208.40A.
Here, after entering Judgment on the charge of First-Degree Sexual Offense, the trial court completed a written Judicial Findings and Order for Sex Offenders form, specifically finding the offense was a sexually violent offense and that the offense was an aggravated offense. The trial court thus required Defendant to register as a sex offender for life and enroll in lifetime SBM. On appeal, Defendant contends, and the State agrees, he was not convicted of an "aggravated offense" as defined by statute and thus lifetime sex offender registration and SBM was improper.
An "aggravated offense" is defined as:
[A]ny criminal offense that includes either of the following: (i) engaging in a sexual act involving vaginal, anal, or oral penetration with a victim of any age through the use of force or the threat of serious violence; or (ii) engaging in a sexual act involving vaginal, anal, or oral penetration with a victim who is less than 12 years old.
N.C. Gen. Stat. § 14-208.6(1a) (2017). When a trial court considers whether an offense is an aggravated offense, it considers only the elements of the offense charged, not the underlying facts of the case. State v. Green , 229 N.C. App. 121, 129, 746 S.E.2d 457, 464 (2013). This Court has specifically held "penetration is not a required element of first-degree sexual offense," and therefore First-Degree Sexual Offense is not an aggravated offense. Id .
In the instant case, pursuant to Green , First-Degree Sexual Offense was not an aggravated offense. Consequently, the trial court erred in finding Defendant was convicted of an aggravated offense. We therefore reverse the trial court's written Judicial Findings and Order for Sex Offenders and remand for the purpose of conducting a new hearing on the sex offender registration requirements.
CONCLUSION
Accordingly, we hold the trial court did not err in denying Defendant's Motions to Dismiss the charges of First-Degree Sexual Offense and First-Degree Kidnapping. We reverse the trial court's finding of use of a deadly weapon as an aggravating factor in sentencing for the First-Degree Sexual Offense conviction and remand for resentencing. We reverse the trial court's Judicial Findings and Order for Sex Offenders and remand for a new hearing on the sex offender registration requirements.
NO ERROR IN PART, REVERSED AND REMANDED IN PART.
Report per Rule 30(e).
Chief Judge McGEE and Judge HUNTER concur.

We use initials to protect the privacy of the victim.

This statute was recodified as N.C. Gen. Stat. § 14-27.26, which is applicable to offenses committed on or after 1 December 2015. 2015 N.C. Sess. Law 181, § 8(a).